IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF GEORGIA
                        COLUMBUS DIVISION

VERONICA BURKS GRIGGS            *

        Plaintiff,                *

vs.                               *        CASE NO. 4:06-CV-076 (CDL)

BELLSOUTH TELECOMMUNICATIONS,     *
INC.; SANDRA GOODWIN; TIRA
KNOCKET; LARRY WOFFORD;           *
COMMUNICATIONS WORKERS OF
AMERICA; and COMMUNICATIONS       *
WORKERS OF AMERICA LOCAL 3212,
                                  *
        Defendants.
                                  *

                            O R D E R

    Plaintiff, Veronica Burks Griggs, filed the above-captioned action asserting claims of reverse race discrimination. Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, against her former employer, BellSouth Telecommunications, Inc. ("BellSouth"), and her former union, Communications Workers of America ("CWA") and Communications Workers of America Local 3212 ("Local 3212"). Plaintiff asserts claims under 42 U.S.C. § 1981 against two BellSouth staffing employees, Sandra Goodwin and Tira Knocket, CWA, Local 3212, and the President of Local 3212, Larry Wofford.[1]

---

    [1]The Court will refer to BellSouth, Goodwin, and Knocket collectively as "the BellSouth defendants." The Court will refer to CWA and Local 3212 collectively as "the Union," and to CWA, Local 3212, and Wofford collectively as "the Union defendants."

Presently before the Court are the BellSouth defendants' Motion for Summary Judgment (Doc. 34) and the Union defendants' Motion for Summary Judgment (Doc. 30). For the following reasons, these motions are denied.

FACTUAL BACKGROUND[2]

## I. Plaintiff's Employment History

Plaintiff, a Caucasian, began working for BellSouth as a Customer Service Representative ("CSR") in April 1999. She worked in the Columbus Customer Service Center until it closed in 2001. Plaintiff then transferred to the Augusta Customer Service Center, where she joined CWA "and local union 3207, which represented [BellSouth] Customer Service employees in Augusta." (Pl.'s Aff. ¶ 6, July 16, 2007.). Throughout her employment as a CSR, Plaintiff "received numerous certificates and recognition" from BellSouth. (*Id.* at ¶ 7; *accord id.* at ¶¶ 13, 9.)

In 2003, Plaintiff became engaged and needed to make arrangements to move back to Columbus. She "investigated job opportunities and decided that [her] best available opportunity was to transfer to Columbus in the best available position with [BellSouth]." (*Id.* at ¶ 5.) At that time, the only available position was an Operator's position at BellSouth's National Directory Assistance ("NDA") Center. Plaintiff transferred her employment in

---

[2]For purposes of summary judgment, the Court construes the facts in the light most favorable to Plaintiff, resolving all reasonable inferences in her favor. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

2

March 2004 despite the fact that an NDA Operator earns substantially lower wages than a CSR. Plaintiff also transferred her union membership to Local 3212, which represents employees of the Columbus NDA Center.

## II. Plaintiff's Promotion

In late 2004, according to the terms of its agreement with the Union ("the Agreement"), BellSouth advertised an available Center Assistant's position at the Columbus NDA Center. Plaintiff, along with seventy-one other NDA Operators, submitted a bid for the promotion. The Agreement required that BellSouth first identify the most qualified candidates from the initial pool of applicants. (Knocket Dep. 14:15-15:2, March 29, 2007; Goodwin Decl. ¶ 5, June 15, 2007.) "If there are two or more candidates [who] are substantially equal in qualifications, [] seniority (years of service) will dictate who is selected."[3] (Goodwin Decl. at ¶ 5.) Tira Knocket, a BellSouth Staffing Manager, performed the initial review. Based on the information contained in BellSouth's electronic personnel management system, Knocket selected Plaintiff and another NDA Operator, Dorothy Kimbrough, as the most qualified candidates. She used the same information to conclude that Plaintiff and Kimbrough's qualifications were substantially equal. Since Plaintiff was "more

---

[3]Article 8C of the Agreement specifically states: "In the selection of employees for transfer or promotion, [BellSouth] will adhere to the principles that seniority will govern if all other qualifications of the individuals considered are determined to be substantially equal." (Pl.'s App. 3 at Article 8C.)

3

[s]enior than Kimbrough by 21 days[,]" Plaintiff received the promotion. (*Id.* at ¶ 12.)

Plaintiff immediately "began training at the 'in-charge desk' . . . [with] other NDA Operators . . . ." (Pl.'s Aff. at ¶ 15.) As Center Assistant, Plaintiff would assume responsibility for monitoring the NDA Center's force management system, which "was implemented at the in-charge desk . . . ." (*Id.*) Although Plaintiff had no previous experience with this system, she believes she was "fully trained" within four or five days. (*Id.*) Plaintiff officially assumed her new position on October 11 and "continued to perform most of the same duties and responsibilities that . . . [she] had previously performed as a [CSR]." (*Id.*)

### III. Kimbrough's Challenge of Plaintiff's Promotion

Kimbrough, who is African-American, disagreed that she and Plaintiff possessed "substantially equal" qualifications. Although Kimbrough and Plaintiff were both employed as NDA Operators prior to the selection decision, Kimbrough had worked over one-thousand hours at the in-charge desk, where she learned to operate and monitor the force management system. Since Plaintiff had no such experience, Kimbrough believed that she was the better qualified candidate. She brought her concerns to Larry Wofford, who agreed that the Union would pursue her grievance with BellSouth.

Sandra Goodwin, BellSouth's Senior Staffing Manager and Knocket's immediate supervisor, investigated the circumstances of

4

Plaintiff's promotion. Goodwin spoke with the Human Resource Generalist assigned to Operator Services and to managers in the Columbus NDA Center. She also compared the duties of Center Assistant with duties Kimbrough performed "during the numerous hours that she worked the In-Charge Desk." (Goodwin Decl. at ¶ 7.) Goodwin ultimately determined that Knocket had mistakenly failed to consider Kimbrough's relief experience as part of the initial promotion decision. She also determined that such experience made Kimbrough the more qualified candidate for Center Assistant. Goodwin's supervisor, Suzanne Snypp, concurred with and approved of her conclusion. Knocket informed Plaintiff of the error on October 26, 2004. She told Plaintiff that Kimbrough was the more qualified applicant and that Plaintiff would be moved back to her position as an NDA Operator.

## IV.  Plaintiff's Claims of Reverse Race Discrimination

Plaintiff believed she had been denied the promotion because she is Caucasian and Kimbrough is African-American.[4] She immediately contacted her union steward, Keith Robinson, in order to file her own grievance with BellSouth. Robinson informed Plaintiff that she

---

[4]Plaintiff contends that relief experience at the in-charge desk is *not* a substantial qualification for the Center Assistant position because: (1) Knocket did not even consider relief experience in making the initial promotion decision; (2) the posted job description does not mention relief experience among the relevant job qualifications; and (3) the only relevant relief experience—operation of the force management system—can be learned in a relatively short period of time. Although the BellSouth defendants disagree with this interpretation of the evidence, the Court must construe the evidence in Plaintiff's favor.

5

needed to fill out a grievance form; however, the evidence conflicts as to whether Plaintiff did so or whether the Union ever received her written grievance. Plaintiff also contacted Wofford, who told Plaintiff he would look into the matter. (*See* Wofford Dep. 26:24-27:5, March 27, 2007.) Wofford also recalls, however, "explain[ing] to [Plaintiff] that she basically did not have a grievance in that the [Agreement] had not been violated, the correct person had been placed in the job . . . ." (*Id.* at 28:1-3.) He did not inform Plaintiff of Kimbrough's grievance or that the Union represented Kimbrough in challenging Plaintiff's initial promotion. (Pl.'s Statement of Material Facts at ¶¶ 35, 39-40; Wofford Dep. 26:14-17.) The Union did not pursue Plaintiff's grievance with BellSouth.[5]

From October 26, 2004 through June 20, 2005, Plaintiff did not report to work at the NDA Center. According to Plaintiff, she "had eight months of emotional ups and downs, crying spells, anxiety, trouble sleeping at night, nightmares when [she] did sleep, all caused by this demotion at work or removal from the job." (Pl.'s Dep. 64:22-65:1, March 26, 2007.) Plaintiff attempted to obtain

---

[5]The evidence conflicts as to *why* the Union defendants did not pursue Plaintiff's grievance. Plaintiff presents some evidence, however, that: (1) the initial decision to promote Plaintiff over Kimbrough did not sit well with a significant portion of Local 3212's Columbus membership; and (2) the majority of Local 3212's Columbus membership is African-American. Plaintiff maintains that Wofford, who is elected to his position as President of Local 3212, felt pressure from his Columbus constituents to favor Kimbrough, who is African-American, over Plaintiff, who is Caucasian. According to Plaintiff, this circumstantial evidence, combined with the fact that she had more seniority than Kimbrough and substantially equal qualifications, demonstrates the Union defendants' discriminatory motive in not pursuing her grievance with BellSouth.

6

short-term disability benefits, but her request was ultimately denied. On June 7, 2005, BellSouth sent Plaintiff a letter directing that she return to work by June 20, 2005. Although Plaintiff did report on June 20, she "couldn't stop crying long enough to get on the phone and talk to a customer" and left the NDA Center after approximately one hour. (Pl.'s Dep. 63:13, 63:20-1.) Plaintiff exhausted her remaining vacation leave and resigned her position with BellSouth on July 22, 2005.

In April 2005, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). After investigating Plaintiff's claims, the EEOC determined that "it is more likely than not that [Plaintiff] was not selected for the Center Assistant position because of her race (White) in violation of Title VII."[6] (Pl.'s App. 1 at 2.) The EEOC issued a Notice of Right to Sue on April 28, 2006, and Plaintiff filed this reverse race discrimination lawsuit on July 7, 2006.

---

[6]None of the defendants presented any evidence to undermine the reliability of the EEOC's investigation of Plaintiff's claims. Since the Court has no basis for excluding this evidence, the resulting EEOC finding of probable cause is part of the record to be considered on summary judgment. *See Smith v. Univ. Servs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1972) (noting district court's obligation "to hear evidence of whatever nature which tends to throw factual light on the controversy," including an EEOC investigative report that is not "arbitrary, capricious or an abuse of discretion"). The Court acknowledges that the EEOC finding does not address the alleged Union discrimination. However, since Plaintiff alleges that the Union defendants "cause[d] or attempt[ed] to cause" employer discrimination, any evidence of BellSouth's discrimination is relevant to Plaintiff's claim against the Union defendants. *See* 42 U.S.C. § 2000e-2(c)(3).

7

SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court resolves "all reasonable doubts about the facts in favor of the non-movant, and draw[s] all justifiable inferences in his .

. . favor." *Fitzpatrick*, 2 F.3d at 1115 (internal quotation marks and citation omitted). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (internal quotation marks and citation omitted).

DISCUSSION

Title VII prohibits employers and labor organizations from engaging in practices that discriminate on the basis of race. 42 U.S.C. § 2000e-2(a), (c). Similarly, 42 U.S.C. § 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975). Plaintiff claims that BellSouth, CWA, and Local 3212 violated Title VII by treating her less favorably than other employees and union members because of her race. She also claims that Defendants Goodwin and Knocket, Defendant Wofford, CWA, and Local 3212 violated § 1981 by "knowingly, intentionally, and discriminatorily[] depriv[ing] Plaintiff of rights that would have been accorded to a similarly situated person of a different race." (Compl. ¶ 30.)

Plaintiff solely relies on circumstantial evidence to show that Defendants discriminated against her because of her race. "When a plaintiff attempts to prove intentional discrimination . . . using circumstantial evidence, [the Eleventh Circuit] appl[ies] the now

9

familiar shifting burden framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)[.]"[7] *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999) (internal citation omitted); *accord Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1076 (8th Cir. 2005) (applying *McDonnell Douglas* standard to Title VII and § 1981 claims asserted against a union). Under *McDonnell Douglas*, a plaintiff must first "create an inference of discrimination by establishing a prima facie case." *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory behavior. *McDonnell Douglas*, 411 U.S. at 802; *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). If the defendant carries this burden, the presumption of discrimination is rebutted. *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). However, the plaintiff can still defeat summary judgement by presenting evidence sufficient to create a jury question as to whether the proffered legitimate, nondiscriminatory reason is merely pretext for a discriminatory decision. *McDonnell Douglas*, 411 U.S. at 804; *Rojas*, 285 F.3d at 1342.

---

[7]Claims of intentional discrimination under Title VII and § 1981 "have the same requirements of proof and use the same analytical framework[.]" *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Accordingly, the Court "shall explicitly address the Title VII claim[s] with the understanding that the analys[es] appl[y] to the § 1981 claim[s] as well." *Id.*

Here, Plaintiff established her prima facie case with respect to the BellSouth defendants and the Union defendants by "creat[ing] an inference of discrimination." *Williams*, 303 F.3d at 1293. The evidence shows that: (1) the BellSouth defendants denied Plaintiff a promotion, for which she was qualified, in favor of an African-American candidate; and (2) the Union defendants pursued a grievance on behalf of an African-American member but failed to pursue Plaintiff's grievance. Although Defendants met their burdens to articulate legitimate, nondiscriminatory reasons for their actions,[8] there is sufficient evidence from which a reasonable jury could conclude that the articulated reasons were pretext for race discrimination. Therefore, since genuine issues of material fact remain to be tried, summary judgment is not appropriate.

CONCLUSION

For reasons stated herein, the BellSouth defendants' Motion for Summary Judgment (Doc. 34) and the Union defendants' Motion for Summary Judgment (Doc. 30) are denied.

---

[8] The BellSouth defendants contend Kimbrough received the promotion for the legitimate, nondiscriminatory reason that she had over one thousand hours of relevant work experience which Plaintiff did not have. (*See* Goodwin Decl. ¶¶ 6-10, June 15, 2007.) The Union defendants contend they pursued Kimbrough's grievance for the legitimate, nondiscriminatory reason that Kimbrough based her grievance on BellSouth's failure to make consistent promotion decisions. (*See* Wofford Decl. ¶¶ 6, 9, Ex. 6, June 14, 2007; Wofford Dep. 23:25.)

11

IT IS SO ORDERED, this 6th day of December, 2007.

                                              S/Clay D. Land
                                                  CLAY D. LAND
                                     UNITED STATES DISTRICT JUDGE